UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

| | |
|---|---|
| JOEY SMITH, | ) |
| | ) CIVIL NO. 6:13-200 |
| Plaintiff | ) |
| | ) |
| v. | ) **OPINION AND ORDER** |
| | ) |
| HOLLER CRAWLERS OFF-ROAD CLUB, INC., | ) |
| ASHER LAND AND MINERAL, LLLP, | ) |
| ASHER COAL MINING COMPANY, | ) |
| JON GRACE, individually and | ) |
| YAMAHA MOTOR CORPORATION, USA, | ) |
| | ) |
| Defendants | ) |

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion for summary judgment (DE 27) filed by defendants Asher Land and Mineral, LLLP and Asher Coal Mining Company (together "Asher"). For the following reasons, the Court will grant the motion.

**I.     Background**

The plaintiff Smith asserts that he took part in an event in Bell County at the Wilderness Trail Off-Road Park. According to the plaintiff, the park consists of 9,000 acres and "advertises over 120 miles of off-road trails available to drivers of ATV's, side-by-sides, dirt bikes, jeeps, trucks and other off-road vehicles." (DE 5, Complaint ¶ 15.) According to the plaintiff, the park is operated by the county. (DE 25 at CM-ECF p. 5.) The event at issue occurred the weekend of October 19, 2012 and was organized by the defendant Holler Crawlers Off-Road Club, Inc. (DE 5, Complaint ¶ 8.)

The event included a Holler Crawler Haunted Forest Ride, the goal of which was to "break the world record for most ATV's and utility terrain vehicles in a parade." (Complaint ¶ 18.) The forest ride occurred the afternoon of October 20, 2012. (DE 5,

Complaint ¶ 18.) That evening, a "haunted trail ride" and a concert took place on the property. (DE 5, Complaint ¶ 19; DE 30-1, Mem. at 1.)

At about 4:00 that afternoon, an event participant named Steve Payne was killed when two underage motorcyclists collided with his motorcycle. (DE 30-1, Mem. at 2.) A couple of hours later, the plaintiff Joey Smith was driving a side-by-side ATV to the concert with Luke Woodward and two other passengers. (DE 30-1, Mem. at 2.) Smith's ATV was overturned and he and Woodward were injured. (DE 30-1, Mem. at 2.)

Smith filed this action against various defendants including Asher. Smith alleges that Asher "owned and operated" the park. (DE 5, Complaint ¶ 15.) The Court construes Smith's complaint to assert a negligence claim against all of the defendants. Asher now moves for summary judgment in its favor.

## II. Analysis

With its summary judgment motion, Asher submits evidence that it owns the land on which a portion of the park is situated and leases that land to Bell County Fiscal Court. (DE 27-2, Asher Aff; DE 27-3, Lease). The plaintiff does not dispute that.

Asher asserts that it is immune from liability under a state statute known as the "Recreational Use Statute," the intent of which is to encourage landowners "to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." KRS 411.190(2). Various states have enacted such statutes in order to provide landowners who open their lands to the public "legislative immunity from acts of ordinary negligence" so that states do not have to "acquire land for recreational use by their citizens." *Midwestern, Inc. v. N. Kentucky*

*Cmty. Ctr.*, 736 S.W.2d 348, 351 (Ky. App. 1987). The limitations on landowner liability are found in subsections 3 and 4 of the statute. Subsection 3 provides:

> Except as specifically recognized by or provided in subsection (6) of this section, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on the premises to persons entering for such purposes.

KRS 411.190(3).

> Subsection 4 of the statute provides:
>
> Except as specifically recognized by or provided in subsection (6) of this section, an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreation purposes does not thereby:
>
> (a) Extend any assurance that the premises are safe for any purpose;
>
> (b) Confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed; or
>
> (c) Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of those persons.

KRS 411.190(4).

These provisions apply to lessors such as Asher who lease land to counties. The statute explicitly states that, unless there is an agreement to the contrary, subsections 3 and 4 apply to "the duties and liability of an owner of land leased to the state or any subdivision thereof for recreational purposes." KRS 411.190(5). *See Jefferson County v. Clausen*, 180 S.W.2d 297, 300 (Ky. 1944) (stating that counties are subdivisions of the state).

Courts' have explained with regard to identical provisions in other states that "[t]he legislative intent was to treat those who use private property for recreational purposes as though they were trespassers. Thus, landowners who open their land for

3

recreational activities have no duty to the public other than to refrain from willful or wanton conduct." *Berman v. Sitrin*, 991 A.2d 1038, 1043-44 (R.I. 2010) (citations and quotations omitted). *See also To v. City of Coeur D Alene*, No. CV 2002 5424, 2004 WL 1080156, at * 2 (Idaho Dist. 2004) (stating that, under Idaho's statute, "[l]andowners are not relieved of all liability, they owe users the same duty as is owed to trespassers, which is the duty to refrain from willful or wanton conduct.")

It is clear that the Kentucky statute was intended to similarly restrict the duty of the landowner who opens his land to the public for recreational purposes without charge. Under Kentucky law, a landowner owes no duty to a trespasser except to "refrain from inflicting or exposing him to wanton or willful injury or setting a trap for him." *Chesser v. Louisville Country Club*, 339 S.W.2d 194, 197 (Ky. 1960). Subsection 6 of Kentucky's Recreational Use Statute explicitly provides that the limitation to liability provided for in subsections 3 and 4 do not apply 1) where the landowner displays a "willful or malicious failure to guard or warn against" dangers on the property or 2) in situations where the landowner charges people to enter the land for recreational purposes. KRS 411.190(6).

Smith does not actually respond to Asher's motion for summary judgment but instead relies on a brief filed by Luke Woodward in a state-court action. Woodward was the passenger in Smith's ATV and filed a complaint in state court against several defendants including Bell County officials and Holler Crawlers Off-Road Club, Inc., all of whom were also named defendants in this action. (DE 31, Response.) The brief that Smith relies on for his response to Asher's summary judgment in this federal action is Woodward's response to a motion for summary judgment that was filed by county

officials and Holler Crawlers in the state-court action. Like Asher, these defendants relied on the Recreational Use Statute in their motion for summary judgment in state court.

In Woodward's state-court response, he argued that the statute does not limit the liability of Holler Crawlers or the Bell County officials because the exceptions set forth in subsection 6 of the statute applied. Woodward argued that both exceptions applied in his case because the defendants were aware of the unsafe condition of the land after Payne died but willfully or maliciously failed to warn other participants. He also argued that concertgoers had to pay to attend the concert on the evening of October 20.

As to the first exception, again, Woodward's arguments were directed at the Bell County officials and Holler Crawlers, not Asher. In Asher's motion before this Court, it has submitted evidence that it had no role in the planning, financing, staffing, promoting or sponsoring of the events and that its sole role in these events was as lessor of the property where the events took place. (DE 27-2, Asher Aff.) Thus, there is no factual basis for a finding that Asher became aware of Payne's death at the time it occurred but willfully or maliciously failed to warn the other participants that day.

As to the second exception, there is no dispute that Asher itself did not charge any concertgoer a fee and did not receive any such money. Instead, Asher has submitted evidence that the only amount it received with regard to the leased premises was an annual $500 rental payment paid by Bell County pursuant to the lease. Smith does not dispute that. (DE 27-2, Asher Aff.) The Recreational Use Statute explicitly provides that "any consideration received by the owner for the lease shall not be deemed a charge within the meaning of this section." KRS § 411.190(6)(b).

The fact that some other defendant may have charged concertgoers a fee to attend the concert does not affect Asher's immunity under the Recreational Use Statute. The statute defines an owner as the "possessor of a fee . . . interest, a tenant, lessee, occupant, or person in control of the premises." KRS § 411.190(1)(b). Thus, property may have multiple "owners" for purposes of the statute. But, the exception in subsection 6 applies where "*the* owner" charges a fee for entrance – not *any* owner or *an* owner charges a fee. Accordingly, the statute should be interpreted to provide that the exception applies only to *the* owner who charges the fee.

### III. Conclusion

For all the above reasons, the Court hereby ORDERS that the motion for summary judgment by Asher Land and Mineral, LLLP and Asher Coal Mining Company (DE 27) is GRANTED and all claims against these defendants are DISMISSED.

Dated September 25, 2014.

*signed:* Karen K. Caldwell

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY